IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE GUARDIANSHIP & CONSERVATORSHIP OF KLEIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE GUARDIANSHIP AND CONSERVATORSHIP OF EUGENE A. KLEIN,
AN INCAPACITATED AND PROTECTED PERSON.

MARCENE E. KLEIN, APPELLEE AND CROSS-APPELLANT,

V.

MICHAEL W. KLEIN AND SHARON A. KLEIN, COCONSERVATORS, APPELLEES,
AND EUGENE A. KLEIN, APPELLANT AND CROSS-APPELLEE.

Filed January 30, 2018.    No. A-17-568.

Appeal from the County Court for Cass County: JOHN F. STEINHEIDER, Judge. Affirmed.

Jordan E. Holst and George T. Blazek, of Ellick, Jones, Buelt, Blazek & Longo, L.L.P., for appellant.

Julie E. Bear, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for appellee Marcene E. Klein.

MOORE, Chief Judge, and RIEDMANN, Judge, and INBODY, Judge, Retired.

MOORE, Chief Judge.

INTRODUCTION

Marcene E. Klein, wife of Eugene A. Klein, filed a petition in the county court for Cass County, seeking the appointment of a permanent guardian and conservator for Eugene. The county court denied the request for appointment of a guardian, but found the evidence supported the appointment of a conservator. The county court appointed two of the parties' children, Michael

- 1 -

W. Klein and Sharon A. Klein, as coconservators. Eugene appeals, and Marcene cross-appeals. Because the evidence is sufficient to support the county court's decision, we affirm.

BACKGROUND

On April 25, 2016, Marcene filed a petition for appointment of a guardian and conservator for Eugene, nominating Michael and Sharon to serve as coguardians and coconservators. At a hearing held on July 1, 2016, the parties agreed to postpone the trial in order to have an authorized physician or psychologist perform a mental status examination on Eugene and to have an inventory of assets filed. On November 3, 2016, Marcene filed an amended petition for appointment of temporary guardian and conservator, asking the county court to appoint Michael and Sharon as temporary coguardians and coconservators for the purpose of obtaining a medical evaluation of Eugene. On December 6, the county court entered an order for appointment of temporary guardians and issued letters of temporary guardianship, appointing Sharon and Lewis V. Klein, another son of Eugene and Marcene, as Eugene's coguardians for the purpose of obtaining the medical evaluation.

Trial was held on March 17, 2017. Eugene was born on February 5, 1931, and was 86 years old at the time of trial. He has worked as a farmer in Cass County, Nebraska all his life. At the time of trial, he had been married to Marcene, age 80, for 59 years. Eugene and Marcene have 12 children who all live near Eugene and Marcene in eastern Nebraska, with the exception of one daughter who lives in New York. The court heard testimony from Marcene and Eugene, together with their children; Michael, Sharon, Lewis, George Klein, and Mary Troia. Testimony was also received from Dr. Glenda Cottam, the clinical psychologist who performed the mental examination of Eugene, and her report was received in evidence.

Marcene testified that during her marriage to Eugene, he has farmed and raised cattle, hogs, horses and a few sheep. She explained that she took care of the household while Eugene and their children managed the farm. The record shows that Eugene and Marcene own 490 acres of farm ground, while Eugene owns another 400 acres in farm ground in joint tenancy with a niece.

In the years preceding this action, Marcene noticed her husband change. His interest in farming decreased, and his short-term memory faded. She became concerned about Eugene's ability to manage his assets and his health. Marcene testified that Eugene does not check on the farm equipment, neglects managing field erosion, and generally spends his time reading and watching television. Additionally, she recounted that Eugene has exhibited strange new behaviors, including sleeping in abandoned cars and locking her out of their house. She was particularly concerned about the effect Eugene's behavioral changes has had on their finances, fearing they may not have enough to pay for nursing home care. Marcene testified that Eugene loaned approximately $80,000 to a grandson without explanation and that the grandson had not made any attempts to repay the loan. She also observed that Eugene's poor financial management made it difficult to pay the property taxes on their land.

Marcene still plans to take care of Eugene in the family home with assistance from some of their children. In view of her age, Marcene does not feel able to take care of her husband's health and manage their assets, although she had been taking care of the joint checking account and paying the monthly living and farm expenses. Marcene nominated Michael to serve as

coguardian and coconservator because he helped her organize their finances after she discovered Eugene's poor financial choices. According to Marcene, Michael has taken over the responsibility of managing the farming operations. Marcene nominated Sharon because she has regularly provided her parents with emotional support.

Michael testified that he is a farmer and lives just over 2 miles from his parents. In the last several years, he noticed his father grow disinterested in managing his farm. Michael observed that the farm buildings have become dilapidated and the machinery has deteriorated. Michael explained that Eugene does not seem to comprehend the implications of his financial decisions or that he has limited funds. Michael's main concern was the "loan" Eugene provided to a grandson. When Michael asked his father about the loan, Eugene denied making it. Michael indicated that as his father's interest in farming declined, his brothers, Lewis and Cecil, managed his farms for him. Michael stated that Lewis' explanations of his financial arrangement with Eugene were inconsistent. According to Michael, under Lewis and Cecil's management, Eugene and Marcene lost money while Lewis profited, which Michael attributed to his father's failure to collect rent. Michael is willing to manage his father's farm while acting as his conservator. He explained his plans to maintain the infrastructure of his father's farms and make them profitable.

Sharon testified that she is single and lives 3 or 4 miles from her parents. She spends much of her free time with her parents. She sometimes does housework for them and takes them to church almost every weekend. Sharon indicated that over the past three years, she has seen her father's memory deteriorate which has negatively affected his ability to manage money. Sharon noticed that Eugene's decreasing interest in farming had left his farm in a state of disrepair. She also observed that he seems more irritable. Sharon stated that she has the skills to be an effective guardian and conservator and that she would work well with Michael in that capacity. When asked about her father's choice for a guardian and conservator, she stated that she does not believe her father is capable of knowing who he can trust.

George is also a farmer who lives a half mile from his parents. Like Michael and Sharon, George has noticed his father's interest in farming, attitude, memory, and the infrastructure of his farm deteriorate over the years. George favors appointing Michael and Sharon as coguardians and coconservators. Mary has observed the same changes in her father's behavior that her mother and siblings described. Mary further agreed with Sharon that her father is unable to choose an appropriate guardian and conservator.

Eugene and Lewis testified on Eugene's behalf. Eugene testified that he did not know much about his wife's petition to appoint a guardian and conservator for him. The action "kind of" surprised him. He explained that he was happy with his arrangements with his son, Lewis, concerning his farm. Eugene did not want Michael to serve as his guardian or conservator, but he did not explain why, other than saying "We don't back and forth much. He ain't there." Eugene would accept the court appointing Sharon as a guardian and conservator if the court appointed someone else with her. When asked if he would want Lewis to serve as guardian or conservator, he replied "Closer to it, yes." Eugene indicated that he does not think a power of attorney is necessary. He did not know how many cattle he owns. He could not remember the trouble his wife and children had paying his property taxes. And he did not explain the approximately $80,000 check he wrote to a grandson.

Lewis testified that he and Cecil custom farmed the land his father owned jointly with his niece for about 10 years. Additionally, before his other siblings took over Eugene's farms, he and Cecil rented land from his father under an oral lease. Lewis also partners with his father to raise and sell cattle. He explained that Michael offered to rent him the land their father owns with their cousin when Michael took over managing their father's farms. But Lewis refused because he did not feel Michael had the legal authority to rent it out. Lewis testified that there has been conflict between him and Michael for several years. He further accused his siblings of "vandalizing" his father's electric fences and inappropriately running cattle after they took over management of Eugene's farms. Lewis believed that his father would be able to manage the farm by himself if someone wrote down the tasks needed to do so. He testified that he would be willing to serve as Eugene's attorney in fact or guardian and conservator.

Dr. Cottam also testified at trial. She completed an assessment on Eugene to determine his current level of emotional, intellectual and academic functioning, his strengths and challenges in memory abilities, and to make recommendations for the future. She testified to the contents of her evaluation report, which the court admitted into evidence as exhibit 1. In her evaluation, she found Eugene to be "very pleasant, very delightful." He told her that he felt very close to his son, Lewis, and that they had farmed together "quite a bit." Cottam administered several intelligence tests on Eugene and she found that he had average results. Cottam testified that although Eugene has some difficulty with memory, he is very sharp in other areas and is articulate. According to Cottam, Eugene has the ability to think about himself and make "some decisions." Cottam opined that Eugene was capable of executing a medical power of attorney, and if the standards were the same, a durable power of attorney. She also believe that Eugene was capable of executing a will.

Because Eugene had significant difficulty with memory, Cottam found he fit the criteria for unspecified neurocognitive disorder. Eugene could not remember the day, month, or year. He could not repeat new stories she told him, and he could not draw an object after she showed it to him. Cottam opined that Eugene's memory problems would make it difficult for him to manage his finances, particularly major transactions. She suggested he should not drive, ride a horse, or operate certain equipment. Because she expects Eugene's memory to only worsen, Cottam advised the family to make plans to assist his well-being and to conserve his assets.

On April 27, 2017, the county court entered an order. The court found that Marcene's evidence did not satisfy the clear and convincing standard required for the appointment of a guardian. But the court found that Marcene did establish by clear and convincing evidence that Eugene is unable to manage his property effectively and that his property will be wasted or dissipated unless proper management is provided. The court relied on Dr. Cottam's testimony as well as the testimony of Marcene and their children that he is no longer interested in farming. The court acknowledged Eugene's preference that Lewis act as his conservator, but concluded it was in Eugene's best interest to appoint Michael and Sharon as coconservators. Eugene timely appealed. Marcene cross-appealed.

ASSIGNMENTS OF ERROR

Eugene assigns, restated, that the county court erred (1) in finding he was in need of a conservator under to Neb. Rev. Stat. § 30-2630 (Reissue 2016) and (2) in appointing his children,

Michael and Sharon, as coconservators despite his wish that the court appoint his son, Lewis, as conservator if it found a conservator to be necessary.

On cross-appeal, Marcene assigns the county court erred when it failed to appoint a guardian for Eugene.

## STANDARD OF REVIEW

An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record in the county court. *In re Guardianship & Conservatorship of Kaiser*, 295 Neb. 532, 891 N.W.2d 84 (2017). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

*Guardianship.*

Marcene assigns the county court erred in failing to appoint a guardian for Eugene. Eugene counters that the evidence shows that less restrictive alternatives to the appointment of a guardian exist, and therefore, under the guardianship statute, the court was right to not appoint a guardian for Eugene. While Marcene admits less restrictive alternatives to a guardianship are available to Eugene, she argues that Eugene is unlikely to pursue them because, as he testified, he does not "really think [they are] necessary."

A court may appoint a guardian under Neb. Rev. Stat. § 30-2620(a) (Reissue 2016) if it is satisfied by clear and convincing evidence that (1) the person for whom a guardian is sought is incapacitated and (2) the appointment is necessary or desirable as the least restrictive alternative available for providing continuing care or supervision of the person alleged to be incapacitated. *In re Guardianship & Conservatorship of Mueller*, 23 Neb. App. 430, 872 N.W.2d 906 (2015).

Upon our review of the record, there is competent evidence to support the county court's finding that appointment of a guardian is not necessary. Dr. Cottam testified that although Eugene's memory is limited, he is capable of thinking about himself and making some decisions. Specifically, she felt that as of the day of her last evaluation, he could appoint a medical power of attorney. Although we recognize Marcene's concern that Eugene will refuse to appoint a medical power of attorney because he desires independence, § 30-2620(a) does not allow a court to appoint a guardian while less restrictive alternatives are available. We find the county court did not err when it found Marcene failed to establish by clear and convincing evidence that a guardian should be appointed at this time.

*Conservatorship.*

Eugene argues the county court erred when it found he was in need of a conservator. He claims the evidence was insufficient to demonstrate his declining short-term memory is affecting his ability to manage his assets.

Under § 30-2630(2), a court may appoint a conservator to manage a person's estate and property affairs if satisfied by clear and convincing evidence that (1) the person is unable to manage his or her property and property affairs effectively for reasons including mental illness,

mental deficiency, or physical illness or disability and (2) the person has property that will be wasted or dissipated unless proper management is provided, or funds are needed for the support, care, and welfare of the person and protection is necessary or desirable to obtain or provide the funds. *In re Guardianship & Conservatorship of Mueller, supra.*

Here, the record contains competent evidence to support appointment of a conservator to manage Eugene's assets. Dr. Cottam found that Eugene's short-term memory is in decline and that the problem is only going to get worse. She found Eugene has challenges learning new information and that he would have difficulty with financial management, particularly understanding major transactions. Cottam suggested that he should not drive, ride a horse, or operate certain equipment, all of which are necessary to run his farms. She advised the family to make plans to assist his well-being and to conserve his assets in anticipation of the decline which is going to happen.

Further, Marcene and her children's testimony indicate Eugene's financial choices have already wasted or dissipated his assets. He has neglected to take care of the farm equipment, and he appears unaware of what property belongs to him. He has allowed the buildings on his farm to become dilapidated and erosion to overcome certain sections of his land. Marcene and Eugene have had difficulty paying property taxes on their land, which Michael and Marcene attribute to insufficient rent collections. And although the trial testimony is somewhat unclear as to the nature of his rental arrangements, particularly with his sons Lewis and Cecil, the record is clear that Eugene does not collect the amount of rental income he otherwise could receive. Eugene also does not seem to understand the consequences of his financial decisions. He "loaned" approximately $80,000 without explanation to a grandson who, as of trial, had yet to begin repayment.

Eugene argues that he does not need the court to appoint a conservator to manage his assets because he is capable of executing a power of attorney, which is a less restrictive alternative. However, unlike Nebraska's guardianship statute, § 30-2630(2) does not require a petitioner to prove that appointing a conservator is the least restrictive alternative available for managing a protected person's assets from waste or dissipation. Competent evidence supports the county court's finding that Eugene is unable to manage his assets due to a mental deficiency and that Eugene has property that will be wasted or dissipated without the appointment of a conservator. Therefore, we find no error on the record in the county court's appointment of a conservator.

*Appointment of Michael and Sharon as Coconservators.*

Eugene assigns the county court erred in appointing Michael and Sharon as coconservators over Eugene's preference that Lewis fulfill that role. When a court finds that a person needs a conservator to manage his or her assets, Neb. Rev. Stat. § 30-2639(b) (Reissue 2016) provides a list of individuals who have priority for appointment. Additionally, § 30-2639(c) allows the court to consider factors beyond statutory priority when appointing a conservator. In relevant part, § 30-2639 provides as follows:

> (b) Persons who are not disqualified under subsection (a) of this section and who exhibit the ability to exercise the powers to be assigned by the court have priority for appointment as conservator in the following order:
>
> . . . .

(3) An individual or corporation nominated by the protected person if he or she is fourteen or more years of age and has, in the opinion of the court, sufficient mental capacity to make an intelligent choice;

(4) The spouse of the protected person;

(5) An adult child of the protected person;

. . . .

(c) When appointing a conservator, the court shall take into consideration the expressed wishes of the person to be protected. A person having priority listed in subdivision (2), (4), (5), (6), or (7) of subsection (b) of this section may nominate in writing a person to serve in his or her stead. With respect to persons having equal priority, the court shall select the person it deems best qualified of those willing to serve. The court, acting in the best interest of the protected person, may pass over a person having priority and appoint a person having lower priority or no priority.

From our review of the record, we conclude the county court did not err when it appointed Michael and Sharon over Lewis.

Eugene did not make a nomination of a conservator under § 30-2639(b)(3). Thus, the person next in line of priority is Marcene, who, under subsection (c), nominated Michael and Sharon. Under subsection (b)(5), the adult children of Eugene have equal priority. With respect to persons having equal priority, the court is required under subsection (c) to select the person it deems best qualified of those willing to serve.

When appointing a conservator, the court shall take into consideration the expressed wishes of the person to be protected. Eugene argues that the court failed to do this. We disagree. In its order, the county court "acknowledged Eugene's preference" is Lewis. The court stated that it "must take into consideration Eugene's expressed wishes." However, after reviewing those with equal priority who have offered to serve as conservator; Michael, Sharon, and Lewis; the court found that Michael and Sharon were the best persons to serve. In reaching this conclusion, the court noted Lewis' reluctance to manage that portion of Eugene's property owned by Eugene and his niece. The court further stated that Lewis has shown no objection to Michael's appointment or the appointment of any other person to act in the capacity of conservator.

The record contains competent evidence to support the county court's findings. Eugene's asserted preference for Lewis was less than clear. He only stated that Lewis is "closer to" who he thinks should serve as conservator. Although the evidence is not clear on the exact nature of Lewis' financial arrangements with his father, the record suggests that Lewis has been less than forthcoming in sharing this information with his siblings. Further, it is questionable whether Eugene understands the current status of his farming and ranching operations such that he could make a competent decision on who should manage them.

The evidence at trial supports the court's appointment of Michael and Sharon. Both have active relationships with their parents and siblings. Sharon takes her parents to church, buys them lunch, and is a generally generous person. Michael's siblings trust his judgment to run the farm. And although Michael, like Lewis, uses some of his father's equipment and farms some of his father's land, he was transparent about his financial obligations under these arrangements. The

court properly took into consideration Eugene's expressed wishes in its decision on who to appoint as conservator. The statute does not require the court to follow those expressed wishes. After reviewing the record, we conclude the county court did not err when it appointed Michael and Sharon as coconservators.

## CONCLUSION

We conclude that the county court did not err in finding that a guardianship was not necessary for Eugene but a conservatorship was. We further conclude the county court did not err in appointing Michael and Sharon as coconservators.

AFFIRMED.